IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DO NO HARM, a nonprofit corporation incorporated in the State of Virginia,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM LEE, in his official capacity as Governor of the State of Tennessee,<br><br>Defendant. | No. _____<br><br><br><br>**COMPLAINT** |

**INTRODUCTION**

1. As the "Volunteer State," Tennessee has a strong tradition of citizens offering their unique talents to serve in the military or government. While citizens may serve on a wide array of boards and commissions, an individual's candidacy often depends on factors outside their control, like their age or race. Sadly, for more than thirty-five years, Tennessee governors have been required to consider an individual's race when making appointments to boards, commissions, and committees.

2. The Board of Podiatric Medical Examiners (Board) is one such board. It regulates, licenses, and investigates podiatrists to ensure they meet the high standards of the profession. Service on the Board generally requires that an individual be a licensed podiatrist for two years. However, the Board also requires the Governor to consider the race of potential board members when making appointments to the Board.

3. Such blatant racial discrimination against individuals who could sit on Tennessee's Board of Podiatric Medical Examiners serves no legitimate government purpose. It is demeaning, patronizing, un-American, and unconstitutional.

1

4. Do No Harm is an organization of over 6,000 medical professionals, students, and policymakers dedicated to eliminating racial discrimination in healthcare. Do No Harm has one or more members who have been licensed podiatrists in Tennessee for more than two years. It brings this lawsuit on behalf of itself and its members to ensure that every podiatrist in Tennessee has the equal right to serve on the Board, and to ensure that the people of Tennessee are regulated by a Board that is not selected on the basis of race.

## JURISDICTION AND VENUE

5. This action arises under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. This Court has jurisdiction over these federal claims under 28 U.S.C. § 1331 (federal question), and § 1343(a)(3) (redress for deprivation of civil rights). Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. § 2201.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1), because Defendant resides in this district, and 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred and continue to occur in this district.

## PARTIES

7. Plaintiff Do No Harm is a national nonprofit corporation headquartered in Glen Allen, Virginia. It is a membership organization of over 6,000 medical professionals, students, and policymakers. Its mission is to protect healthcare from a radical, divisive, and discriminatory ideology. Do No Harm's membership includes one or more individuals who has been a licensed podiatrist for over two years in Tennessee.

8. Defendant William Lee is the Governor of the State of Tennessee. Governor Lee is required by Tennessee law to make all appointments to the Board of Podiatric Medical Examiners.

Tenn. Code §§ 8-1-111 and 63-3-103(b) require Governor Lee to consider race when making appointments to the Board. Governor Lee is sued in his official capacity.

FACTUAL ALLEGATIONS

**History of Racial Mandate on Tennessee Boards**

9. In 1988, the Tennessee legislature considered a bill endorsed by the American Association of Retired Persons that directed the Governor to appoint at least one person sixty or older to more than seventy different boards.

10. At the time, legislators raised concerns on whether this proposed provision was "legal" and "constitutional."

11. During the April 13, 1988, senate hearing, state senators debated an amendment to the bill that would tack on a racial mandate to all the delineated boards.

12. Throughout the legislative discussions, there was no mention of the governmental interest behind imposing a race-based classification for more than seventy Tennessee boards.

13. The legislative record contains no discussion of racial discrimination, statistics, or any other alleged governmental interest that formed the basis for the ultimate bill that imposed a racial mandate for appointments to more than seventy Tennessee boards.

14. In addition to the specifically delineated quotas, the bill also contained a catch-all provision which directed the Governor to consider these quotas whenever making appointments to "boards, commissions, committees, and other governing or advisory entities of the executive branch of state government, not specifically identified by the provisions of this act." This provision is codified as Tenn. Code § 8-1-111.

**The Board of Podiatric Medical Examiners**

15. The Board of Podiatric Medical Examiners was created in 1931 to regulate the practice of podiatry in Tennessee.[1]

16. To protect the health, safety, and welfare of Tennesseans, the Board interprets the laws, rules, and regulations governing podiatry in Tennessee. The Board licenses qualified podiatrists, investigates allegations of misconduct, and disciplines podiatrists that violate its rules or regulations.

17. The Board is comprised of six members appointed by the Governor. Four of those members must be licensed Tennessee podiatrists who have been regulated by the Board for at least two years. Tenn. Code § 63-3-103. A fifth member must be a licensed orthotist, prosthetist, or pedorthist. Tenn. Code § 63-3-213. A sixth member must be a citizen member who does not engage in any conduct that is regulated by the Board. Tenn. Code § 63-1-124.

18. When making appointments to the Board the Governor is required to "strive to ensure … that at least one (1) person serving on the board is a member of a racial minority." Tenn. Code §§ 8-1-111 & 63-3-103(b).

**Openings on the Board**

19. Two seats on the Board opened in June 2023. Both are currently open. One of the openings is held by the only individual who satisfies the racial mandates required by Tenn. Code §§ 8-1-111 & 63-3-103(b).

---

[1] Under the 1931 statute, the Board was known as the "Board of Registration in Chiropody." *See* 1931 Pub. Acts, c. 31, § 3.

20. Because of the racial mandates imposed by Tenn. Code §§ 8-1-111 & 63-3-103(b), Governor Lee must "strive to ensure" that one of the current openings on the Board is filled by a racial minority.

21. Do No Harm has one or more members who are qualified, willing, and able to be appointed to the Board of Podiatric Examiners, if the racial mandates were enjoined.

## CLAIMS FOR RELIEF

### First Cause of Action

**Tenn. Code § 63-3-103(b) Violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution**

22. Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 21.

23. Under the Fourteenth Amendment to the United States Constitution, "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

24. Tenn. Code § 63-3-103(b) requires the Governor to consider and make decisions on the basis the race of potential board members when making appointments to the Board of Podiatric Medical Examiners.

25. Governmental classifications on the basis of race violate the Equal Protection Clause unless they are narrowly tailored to a compelling governmental interest.

26. The racial mandate in Section 63-3-103(b) does not serve a compelling government interest.

27. The racial mandate in Section 63-3-103(b) does not remediate any specific instances of racial discrimination that violated the Constitution or statutes.

28. Even if the racial mandate in Section 63-3-103(b) served a compelling government interest, it is not narrowly tailored to remediating past, intentional discrimination.

29. The racial mandate in Section 63-3-103(b) stereotypes individuals on the basis of race, treats all individuals of different races as fungible, mandates racial quotas, requires racial balancing, has no "good faith exception," and has no end date.

**Second Cause of Action**

**Tenn. Code § 8-1-111 Violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution**

30. Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 29.

31. Under the Fourteenth Amendment to the United States Constitution, "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

32. Tenn. Code § 8-1-111 requires the Governor to consider and make decisions on the basis the race of potential board members when making appointments to Tennessee Boards.

33. Governmental classifications on the basis of race violate the Equal Protection Clause unless they are narrowly tailored to a compelling governmental interest.

34. The racial mandate in Section 8-1-111 does not serve a compelling government interest.

35. The racial mandate in Section 8-1-111 does not remediate any specific instances of racial discrimination that violated the Constitution or statutes.

36. Even if the racial mandate in Section 8-1-111 served a compelling government interest, it is not narrowly tailored to remediating past, intentional discrimination.

6

37. The racial mandate in Section 8-1-111 stereotypes individuals on the basis of race, treats all individuals of different races as fungible, mandates racial quotas, requires racial balancing, has no "good faith exception," and has no end date.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief.

1. A declaration that the racial mandates in Tenn. Code §§ 8-1-111 and 63-3-103(b) violate the Equal Protection Clause to the Fourteenth Amendment to the United States Constitution;

2. A permanent prohibitory injunction forbidding the Governor and his agents from enforcing, or attempting to enforce, the racial mandates in Tenn. Code §§ 8-1-111 and 63-3-103(b);

3. An award of attorneys' fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988; and

4. Such other relief as the Court deems just and proper.

DATED: November 8, 2023

Respectfully submitted,

/s/ Daniel J. Turklay
Daniel J. Turklay (#034600)
Turklay Law
11205 Lebanon Rd #51
Mt. Juliet, TN 37122
Telephone: (615) 838-5903
Fax: (888) 868-0014
daniel@turklaylaw.com

Joshua P. Thompson, Cal. Bar No. 250955*
PACIFIC LEGAL FOUNDATION
555 Capitol Mall, Suite 1290
Sacramento, CA 95814

Telephone: (916) 419-7111
JThompson@pacificlegal.org

Laura D'Agostino, Va. Bar No. 91556*
PACIFIC LEGAL FOUNDATION
3100 Clarendon Boulevard, Suite 1000
Arlington, VA 22201,
Telephone: (202) 888-6881
LDAgostino@pacificlegal.org

*Attorneys for Plaintiff*

**Pro Hac Vice motions forthcoming*