IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DO NO HARM, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
|   v. | )   Case No. 3:23-cv-01175 |
| | ) |
| WILLIAM LEE, in his official capacity as | ) |
| Governor of the State of Tennessee, | ) |
| | ) |
|    Defendant. | ) |

**DEFENDANT'S MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS**

# INTRODUCTION

Plaintiff Do No Harm—a non-profit organization based in Virginia and comprised of students, policymakers, and medical professionals—challenges two Tennessee statutes that call for the Governor to "strive to ensure" that at least one member of various boards and commissions is a member of a racial minority. *See* Tenn. Code Ann. § 8-1-111; *id.* § 63-3-103(b). Plaintiff contends that the challenged laws violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and that the laws prevent its licensed podiatrist members from filling two vacant positions on the Tennessee Board of Podiatric Medical Examiners ("Board").

The case should be dismissed for lack of subject matter jurisdiction because Plaintiff has not adequately alleged any cognizable injury on behalf of its members or itself. Where, as here, an organization seeks standing on behalf of its members, the organization must identify a member that has standing. Plaintiff has not—and indeed cannot—because the Board vacancies were filled before Do No Harm filed suit, and no vacancy for licensed podiatrists or any other physician exists until June of 2025. *See* Complaint, ECF 1, at ¶ 4 (stating that Plaintiff brings this suit "to ensure that every podiatrist in Tennessee has the equal right to serve on the Board"). Plaintiff therefore has not and cannot satisfy the "irreducible constitutional minimum of standing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). For all these reasons, Defendant respectfully requests the matter be dismissed.

## STATEMENT OF THE CASE

**The Board**

The Board is statutorily created and has authority to regulate the practice of podiatry, the treatment of foot- and ankle-related ailments, in Tennessee. Tenn. Code Ann. § 63-3-106. It consists of six members. Compl., ¶ 17. Four of these members are licensed podiatrists with at least two years of practice in Tennessee. *Id.* A fifth member must be a licensed orthotist, prosthetist, or pedorthist. *Id.* And its sixth member must not engage in any conduct regulated by the Board, a so-called "citizen member." *Id.*; *see* Tenn. Code Ann. § 63-1-124.

Members of the Board are appointed by the Governor to four-year terms. Tenn. Code Ann. § 63-3-103(b). Two seats on the board became vacant at the end of June 2023, due to the expiration of the members' terms. Compl., ¶ 19. On November 1, Governor Lee filled one of those vacancies by reappointing Dr. Bhekumuzi Khumalo to a four-year term. Ex. A, Dr. Khumalo Appt. Ltr.; *Bd. Member Details, Dr. Khumalo*, Tenn. Sec'y of State, http://tinyurl.com/584e88mj (last visited Jan. 5, 2024); *Dr. Khumalo Oath of Office*, http://tinyurl.com/5n7hu7vc (last visited Jan 5. 2024).[1] And for the second vacancy, he appointed Dr. Aaron Sorensen, also for a four-year term. Ex. B, Dr. Sorensen Appt. Ltr.; *Bd. Member Details, Dr. Sorensen*, Tenn. Sec'y of State, http://tinyurl.com/yc8yz4r7 (last visited Jan. 5, 2024); *Dr. Sorensen Oath of Office*, http://tinyurl.com/y5dmjksk (last visited Jan. 5, 2024). With those appointments, there are no openings for a licensed practitioner on the Board, and no current practitioner's term expires until June 30, 2025. *Bd. of Pod. Med. Examiners: Bd. Members List*, Tenn. Dep't of Health http://tinyurl.com/38aa627e (last visited Dec. 28, 2023) (showing term expiration dates).[2] The only remaining opening is for the statutorily reserved citizen member. *Id.*

---

[1] Information that is available on government websites is self-authenticating pursuant to Rule 902 of the Federal Rules of Evidence, and "courts may accordingly take judicial notice of the information found on these websites." *Oak Ridge Env't Peace All. v. Perry*, 412 F. Supp. 3d 786, 810 n.6 (E.D. Tenn. 2019) (citing *Demis v. Sniezek*, 558 F.3d 508, 513 n.2 (6th Cir. 2009) (taking notice of government website); and *Newton v. Holland*, No. 13-61, 2014 WL 318567, at *1 (E.D. Ky. Jan. 29, 2014) (collecting cases)).

[2] See *Perry*, 412 F. Supp. 3d at 810.

3

**Do No Harm**

Do No Harm is a "national nonprofit corporation" membership organization headquartered in Glen Allen, Virginia, comprised of "medical professionals, students, and policymakers." Compl., ¶ 7. Do No Harm alleges that it has at least one unidentified member that (at some undefined time) has been a licensed podiatrist in Tennessee for more than two years. *Id.* But it is unclear whether any member of the organization has an active license or is practicing in Tennessee. *See id.* ¶¶ 4, 7. Moreover, it is unclear whether any member of Do No Harm currently lives in Tennessee. *Id.*

Do No Harm challenges two statutes pertaining to Executive Branch appointments. First, Tenn. Code Ann. § 8-1-111, which requires that for appointments to "governing or advisory entities of the executive branch of state government, the governor shall strive to ensure that at least one (1) such citizen serving . . . is a member of a racial minority." And second, specific to this case, Tenn. Code Ann. § 63-3-103(b) encourages that same striving for appointments to the Board.

## MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows "for the dismissal of an action for lack of subject matter jurisdiction," *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014), which includes "Article III standing . . . question[s]," *Am. VioCare Inc. v. Howard & Howard Att'ys PLLC*, 702 F. App'x 416, 419 (6th Cir. 2017). A 12(b)(1) motion to dismiss "can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright*, 751 F.3d at 759.

"When reviewing a facial attack, a district court takes the allegations in the complaint as true" subject to the same plausibility standards governing "12(b)(6) motions to dismiss." *Genteck Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). While this Court accepts the truth of Plaintiffs' allegations on a facial challenge, "[c]onclusory allegations or legal

4

conclusions masquerading as factual allegations will not suffice." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). But for factual attacks, courts "weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012) (citations omitted); *Gentek*, 491 F.3d at 330 (citations omitted) (allowing consideration of "affidavits, documents, and even a limited evidentiary hearing"). And for either, this Court must "presume that [it] lack[s] jurisdiction," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006), for "the *plaintiff* . . . [must] prov[e] jurisdiction" exists "to survive the motion," *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986) (emphasis in original).

## ARGUMENT

"The doctrine of standing is a threshold constitutional question of justiciability." *Mason v. Adams Cnty. Recorder*, 901 F.3d 753, 756 (6th Cir. 2018). Standing requires a plaintiff to show "(1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *FEC v. Cruz*, 142 S. Ct. 1638, 1646 (2022). To confer standing, an injury must be particular to the plaintiff; the Supreme Court "repeatedly has rejected claims of standing predicated on the right, possessed by every citizen, to require that the Government be administered according to law." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 482-83 (1982) (quotations omitted).

Here, Plaintiff failed to allege that the challenged statutes caused any cognizable injury to an identified member or to itself. It therefore lacks standing, and the Court should dismiss this suit.

I.  **Do No Harm Does Not Have Standing on Behalf of Its Members.**

Do No Harm appears to rely primarily on associational standing. *See* Compl., ¶ 4 ("bring[ing] this lawsuit on behalf of itself and *its members*" (emphasis added)); *id.*, ¶ 21 ("Do No Harm has one or more members who are qualified, willing, and able to be appointed to the Board

5

of Podiatric Examiners, if the racial mandates were enjoined."). For associational standing, an organization must show that "its members would otherwise have standing to sue in their own right"; the "interests" that the suit "seeks to protect are germane to the organization's purpose"; and "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)); *Ass'n of Am. Physicians & Surgeons v. USFDA*, 13 F.4th 531, 537 (6th Cir. 2021) (quoting the same).

Plaintiff as an organization fails at step one of these requirements in two primary ways: *First*, facially, Do No Harm's complaint fails to identify any injured members. And *second*, factually, no injury exists to its members because the Board currently has no open seats affected by the statutes. For either reason, this Court should grant Defendant's motion to dismiss.

### A. Plaintiff Fails to Identify Any Member That Has Been Injured.

Associational standing's first element requires that Plaintiff "must do more than identify a likelihood that" Defendant "will harm an unknown member." *Ass'n of Am. Physicians*, 13 F.4th at 543. It must have instead "identif[ied] a member who has suffered (or is about to suffer) a concrete and particularized injury from the defendant's conduct." *Id.* Just a "possib[ility] . . . that one individual will meet all of th[e] criteria . . . does no suffice." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009); *see also Friends of Georges, Inc. v. Mulroy*, No. 2:23-cv-02163, 2023 WL 3790583, at *11 (W.D. Tenn. June 2, 2023) ("The bottom line is that Plaintiff failed to identify a single member who sustained an Article III injury. It also failed to substantiate its claim that all its members would be injured . . . Therefore, Plaintiff failed to meet its burden to establish

associational standing."). But that barebones possibility is all Plaintiff alleges. Compl., ¶ 21. ("[O]ne or more members [is] qualified, willing, and able to be appointed to the Board.").[3]

Nor does Plaintiff satisfy the singular exception to this requirement, which is "where *all* the members of the organization are affected by the challenged activity." *Summers*, 555 U.S. at 498-99 (emphasis in original). Plaintiff did not, and cannot, allege that the challenged statutes affect all its members. This is no mere pleading deficiency; as a "national nonprofit corporation," with a Virginia headquarters, Compl., ¶ 7, the allegations strongly suggest that Plaintiff has members outside of Tennessee, *all* of which would have to be "able and ready" to apply for a Board position—not plausible. *Ne. Florida Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993).

**B.     No Member Has a Cognizable Injury.**

  **1.  All practitioner seats are filled.**

Even were Plaintiff to identify a member, none would have standing factually because there are currently no open practitioner seats on the Board. With Plaintiff seeking prospective relief, it must show a *present* harm, not mere exposure to past illegal conduct. *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 491 (6th Cir. 2017); *see also Pucci v. Mich. Supreme Ct.*, 601 F. Supp. 2d 886, 896-97 (E.D. Mich. 2009) (holding that suit regarding a plaintiff's eligibility for a court administrator position was "hypothetical" because "[t]he court administrator position is currently filled").

For any practitioner member of Do No Harm, Governor Lee has already filled the Board's two vacant practitioner seats, appointing Drs. Khumalo and Sorensen in November 2023. Those practitioners have signed their oaths of office and have entered four-year terms, leaving no

---

[3] Notably, even on broad terms, Plaintiff fails to identify how any member is injured by the law. For example, the Complaint does not specify whether its members who are licensed podiatrists are also members of a racial minority.

practitioner seat open again until at least June 30, 2025, when the next practitioner member's term expires, *see Bd. Members*, http://tinyurl.com/38aa627e. With no vacancies on the Board until June 2025, Plaintiff and its members do not face "imminent" harm sufficient to invoke the Court's jurisdiction.

### 2. No openings prior to June 2027 are affected by the challenged statutes.

Do No Harm originally brought this action on behalf of its practitioner members. It should not be granted leave to amend to challenge the filling of the vacant citizen post on the Board, because, factually, that position too is not affected by the challenged laws. By those laws, the General Assembly asks the Governor to "'strive to ensure' that *one* of the current openings on the Board is filled by a racial minority." Compl., ¶ 20 (quoting Tenn. Code §§ 8-1-111, 63-3-103(b)) (emphasis added). Dr. Khumalo, who is African American, was reappointed to a four-year term on the Board on November 1, "effective immediately." Ex. A. Because the Board currently has a member who belongs to a racial minority, any Board openings are open to all qualified and interested persons, leaving no barrier to entry before his term's end—June 30, 2027. *See City of Jacksonville*, 508 U.S. at 666 ("The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.").

In other words, the challenged laws have no bearing on the filling of the remaining open citizen member seat. Thus, none of Plaintiff's "qualified, willing, and able" members, Compl., ¶ 21, can suffer any harm attributable to the challenged statutes before June 2027, when Dr. Khumalo's term ends. *Ass'n of Am. Physicians*, 13 F.4th at 543.

8

Case 3:23-cv-01175    Document 20-1    Filed 01/08/24    Page 8 of 11 PageID #: 61

**II.     Plaintiff Has No Injury on Behalf of Itself.**

Plaintiff vaguely asserts that it brings suit on behalf of *itself*, as well as its members. Compl., ¶ 4.  Organizational plaintiffs like Do No Harm must establish standing through "the same inquiry" that applies to "individual[s]" where the organization suffers harm itself.  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378 (1982).  Here, the organization itself could never be eligible for a seat on the Board, negating any injury to itself.

Plaintiff falls back on a generalized interest in ensuring "that the people of Tennessee are regulated by a Board that is not selected on the basis of race."  Compl., ¶ 4.  But such claim is an impermissible challenge to "laws of general application where [Plaintiff's] own injury is not distinct from that suffered in general by other taxpayers or citizens."  *Johnson v. Bredesen*, 356 F. App'x 781, 784 (6th Cir. 2009) (quoting *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 598 (2007)).  The Supreme Court "repeatedly has rejected claims of standing predicated on 'the right . . . to require that the Government be administered according to law.'"  *Valley Forge Christian Coll.*, 454 U.S. at 482-83 (quotations omitted); *see also Lujan*, 504 U.S. at 576-77 (holding that the "public interest in proper administration of the laws" is not sufficiently particularized to create Article III standing).

Likewise, cases involving Tennessee's appointment of appellate judges have been dismissed for lack of standing, being "'precisely the kind of undifferentiated, generalized grievance about the conduct of government that [the Supreme Court] ha[s] refused to countenance in the past.'"  *See Moncier v. Haslam*, 1 F. Supp. 3d 854, 859 (E.D. Tenn. 2014) (quoting *Lance v. Coffman*, 549 U.S. 437, 442 (2007) (alterations in *Haslam*)) (challenging appointment of appellate judges); *see also Johnson*, 356 F. App'x at 784 (challenging appointment of supreme court justices).  Without more, Plaintiff complains of no cognizable injury to itself.

9

Case 3:23-cv-01175    Document 20-1    Filed 01/08/24    Page 9 of 11 PageID #: 62

## CONCLUSION

For the foregoing reasons, this Court should grant Defendant's motion to dismiss for lack of standing.

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General & Reporter

*/s/ Reed N. Smith*
Reed N. Smith (BPR# 040059)
Assistant Attorney General

Trenton Meriwether (BPR# 038577)
Office of the Tennessee Attorney General
Healthcare Division
P.O. Box 20207
Nashville, Tennessee 37202
(615) 741-9593
reed.smith@ag.tn.gov
trenton.meriwether@ag.tn.gov

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via this Court's electronic filing system on this 8th day of January 2024.

Daniel J. Turklay (BPR# 034600)
TURKLAY LAW
11205 Lebanon Rd #51
Mt. Juliet, TN 37122
P: (615) 838-5903
F: (888) 868-0014
daniel@turklaylaw.com

Joshua P. Thompson (CA Bar# 250955)
PACIFIC LEGAL FOUNDATION
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
P: (916) 419-7111
JThompson@pacificlegal.org

Laura D'Agostino (VA Bar# 91556)
PACIFIC LEGAL FOUNDATION
3100 Clarendon Boulevard, Suite 1000
Arlington, VA 22201
P: (202) 888-6881
LDAgostino@pacificlegal.org

*Attorneys for Plaintiff*

                              */s/ Reed N. Smith*
                              REED N. SMITH
                              Assistant Attorney General