IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DO NO HARM, a nonprofit corporation incorporated in the State of Virginia,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM LEE, in his official capacity as Governor of the State of Tennessee,<br><br>Defendant. | No. 3:23-cv-01175<br><br>**JUDGE CAMPBELL**<br>**MAGISTRATE JUDGE HOLMES** |

**FIRST AMENDED COMPLAINT**

INTRODUCTION

1. As the Volunteer State, Tennessee has a strong tradition of citizens offering their unique talents to serve in the military or government. While citizens may serve on a wide array of boards and commissions, an individual's candidacy often depends on factors outside his or her control, like age or race. Sadly, for more than thirty-five years, Tennessee governors have been required to consider an individual's race when making appointments to the state's boards, commissions, and committees.

2. These race-based appointments are often made in secret with little to no public oversight. The regulated public only learns of the discriminatory appointments weeks after they occur with no opportunity to question a nominee's qualifications or object to the constitutionality of the governor's actions.

3. The Board of Podiatric Medical Examiners (Board) is one such board. It regulates, licenses, and investigates podiatrists to ensure they meet the high standards of the profession. Service on the Board generally requires that an individual be a licensed podiatrist for two years.

1

However, the Board also requires the Governor to consider the race of potential board members when making appointments to the Board.

4. The Governor recently made multiple unannounced, race-conscious appointments to the Board. Neither the public, nor the regulated podiatrists were made aware of these appointments. They only came to light after the original complaint in this lawsuit was filed.

5. Such blatant racial discrimination against individuals who could sit on Tennessee's Board of Podiatric Medical Examiners serves no legitimate government purpose. It is demeaning, patronizing, un-American, and unconstitutional.

6. Do No Harm is an organization of over 6,000 medical professionals, students, and policymakers dedicated to eliminating racial discrimination in healthcare. It has members who are qualified, ready, willing, and able to be appointed to the Board. It brings this lawsuit to vindicate its members' constitutional rights and to ensure that every qualified podiatrist and qualified citizen in Tennessee has the equal right to serve on the Board, and to ensure that Tennesseans are regulated by a Board that is not selected on the basis of race.

## JURISDICTION AND VENUE

7. This action arises under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. This Court has jurisdiction over these federal claims under 28 U.S.C. § 1331 (federal question), and § 1343(a)(3) (redress for deprivation of civil rights). Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. § 2201.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1), because Defendant resides in this district, and 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred and continue to occur in this district.

# PARTIES

9. Plaintiff Do No Harm is a national nonprofit corporation headquartered in Glen Allen, Virginia. It is a membership organization of over 6,000 medical professionals, students, and policymakers. Its mission is to protect healthcare from a radical, divisive, and discriminatory ideology. Do No Harm's membership includes one or more individuals who have been a licensed podiatrist for over two years in Tennessee. Do No Harm's membership also includes one or more Tennessee citizens who do not engage in any profession or business activity subject to regulation by the Board.

10. Specifically, Do No Harm Member "A" is a licensed podiatrist in Tennessee. He is a male who is not a member of a racial minority. Member A has been licensed as a Tennessee podiatrist for over 30 years. Member A resides and practices podiatry in Tennessee. Member A is qualified, ready, willing, and able to be appointed to the Board of Podiatric Medical Examiners.

11. Further, Do No Harm Member "B" is a Tennessee citizen. He is a male who is not a member of a racial minority. He has resided in Tennessee for over 27 years. Member B does not engage in any profession, business, or activity subject to regulation by the Board. Member B is qualified, ready, willing, and able to be appointed as a citizen member to the Board of Podiatric Medical Examiners.

12. Defendant William Lee is the Governor of the State of Tennessee. Governor Lee is required by Tennessee law to make all appointments to the Board of Podiatric Medical Examiners. Tenn. Code §§ 8-1-111 and 63-3-103(b) require Governor Lee to consider race when making appointments to the Board. Governor Lee is sued in his official capacity.

# FACTUAL ALLEGATIONS

**History of Racial Mandate on Tennessee Boards**

13. In 1988, the Tennessee legislature considered a bill endorsed by the American Association of Retired Persons that directed the Governor to appoint at least one person sixty or older to more than seventy different boards.

14. At the time, legislators raised concerns on whether this proposed provision was "legal" and "constitutional."

15. During the April 13, 1988, senate hearing, state senators debated an amendment to the bill that would tack on a racial mandate to all the delineated boards.

16. Throughout the legislative discussions, there was no mention of the governmental interest behind imposing a race-based classification for more than seventy Tennessee boards.

17. The legislative record contains no discussion of racial discrimination, statistics, or any other alleged governmental interest that formed the basis for the ultimate bill that imposed a racial mandate for appointments to more than seventy Tennessee boards.

18. In addition to the specifically delineated quotas, the bill also contained a catch-all provision which directed the Governor to consider these quotas whenever making appointments to "boards, commissions, committees, and other governing or advisory entities of the executive branch of state government, not specifically identified by the provisions of this act." This provision is codified as Tenn. Code § 8-1-111.

**The Board of Podiatric Medical Examiners**

19. The Board of Podiatric Medical Examiners was created in 1931 to regulate the practice of podiatry in Tennessee.[1]

20. To protect the health, safety, and welfare of Tennesseans, the Board interprets the laws, rules, and regulations governing podiatry in Tennessee. The Board licenses qualified podiatrists, investigates allegations of misconduct, and disciplines podiatrists that violate its rules or regulations.

21. The Board is comprised of six members appointed by the Governor. Four of those members must be licensed Tennessee podiatrists who have been regulated by the Board for at least two years. Tenn. Code § 63-3-103. A fifth member must be a licensed orthotist, prosthetist, or pedorthist. Tenn. Code § 63-3-213. A sixth member must be a citizen member who does not engage in any conduct that is regulated by the Board. Tenn. Code § 63-1-124.

22. When making appointments to the Board the Governor is required to "strive to ensure … that at least one (1) person serving on the board is a member of a racial minority." Tenn. Code §§ 8-1-111 & 63-3-103(b).

23. So long as these racial quotas remain in place, Members A and B will never receive equal consideration for the openings on the Board—even in instances where the quotas have been met.

**Appointments to the Board**

24. Two physician seats on the Board opened in June 2023. No appointments to fill those slots were made in July, August, September, or October.

---

[1] Under the 1931 statute, the Board was known as the "Board of Registration in Chiropody." *See* 1931 Pub. Acts, ch. 31, § 3.

25. On November 8, 2023, Plaintiff filed its initial complaint in this case. At that time there was no indication in any publicly available domain that any appointments to the Board had been made to fill the two openings.

26. No public statements from Governor Lee were made announcing appointments to the Board. And the Board made no announcements that the vacancies had been filled. Well into December, the Board's public website indicated that the two Board positions were open.

27. Yet, on November 1, 2023, Governor Lee had purportedly made two appointments to the Board by reappointing two holdover Board members.

28. Conversely, the Board seat reserved for a consumer member was listed as occupied when the original complaint was filed.

29. Indeed, at least one current Tennessee government website indicates that the position is filled.[2]

30. However, the website maintained by the Board of Podiatric Medical Examiners indicates that the seat is currently vacant.[3]

31. These inconsistencies and governmental vagaries underscore the volatility of Board membership.

32. Members come on and off the Board at unpredictable times. The Governor makes appointments to the Board at unpredictable times.

33. Two podiatrist Board positions are scheduled to become vacant on June 30, 2025, less than 18 months from now.

---

[2] https://tnsos.net/publications/oa/memberdetails.php?Member=43975&Board=106&Position=583.
[3] https://www.tn.gov/health/health-program-areas/health-professional-boards/podiatric-board/podiatric-board/members.html.

34. At all times, the racial mandates imposed by Tenn. Code §§ 8-1-111 & 63-3-103(b), require the governor to "strive to ensure" that a "racial minority" sits on the Board.

35. Do No Harm has one or more members who are qualified, willing, and able to be appointed to the Board of Podiatric Examiners for the upcoming podiatrist vacancies.

36. Do No Harm has one or more members who are qualified, willing, and able to be appointed to the Board of Podiatric Medical Examiners for the current consumer member vacancy.

## CLAIMS FOR RELIEF

### First Cause of Action

**Tenn. Code § 63-3-103(b) Violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution**

37. Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 36.

38. Under the Fourteenth Amendment to the United States Constitution, "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

39. Tenn. Code § 63-3-103(b) requires the Governor to consider and make decisions on the basis of the race of potential board members when making appointments to the Board of Podiatric Medical Examiners.

40. Governmental classifications on the basis of race violate the Equal Protection Clause unless they are narrowly tailored to a compelling governmental interest.

41. The racial mandate in section 63-3-103(b) does not serve a compelling government interest.

42. The racial mandate in section 63-3-103(b) does not remediate any specific instances of racial discrimination that violated the Constitution or statutes.

7

43. Even if the racial mandate in section 63-3-103(b) served a compelling government interest, it is not narrowly tailored to remediating past, intentional discrimination.

44. The racial mandate in section 63-3-103(b) stereotypes individuals on the basis of race, treats all individuals of different races as fungible, mandates racial quotas, requires racial balancing, has no "good faith exception," and has no end date.

## Second Cause of Action

**Tenn. Code § 8-1-111 Violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution**

45. Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 36.

46. Under the Fourteenth Amendment to the United States Constitution, "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

47. Tenn. Code § 8-1-111 requires the Governor to consider and make decisions on the basis of the race of potential board members when making appointments to Tennessee Boards.

48. Governmental classifications on the basis of race violate the Equal Protection Clause unless they are narrowly tailored to a compelling governmental interest.

49. The racial mandate in section 8-1-111 does not serve a compelling government interest.

50. The racial mandate in section 8-1-111 does not remediate any specific instances of racial discrimination that violated the Constitution or statutes.

51. Even if the racial mandate in section 8-1-111 served a compelling government interest, it is not narrowly tailored to remediating past, intentional discrimination.

52. The racial mandate in section 8-1-111 stereotypes individuals on the basis of race, treats all individuals of different races as fungible, mandates racial quotas, requires racial balancing, has no "good faith exception," and has no end date.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief.

1. A declaration that the racial mandates in Tenn. Code §§ 8-1-111 and 63-3-103(b) violate the Equal Protection Clause to the Fourteenth Amendment to the United States Constitution;

2. A permanent prohibitory injunction forbidding the Governor and his agents from enforcing, or attempting to enforce, the racial mandates in Tenn. Code §§ 8-1-111 and 63-3-103(b);

3. An award of attorneys' fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988; and

4. Such other relief as the Court deems just and proper.

DATED: January 19, 2024.

Respectfully submitted,

Daniel J. Turklay (#034600)
TURKLAY LAW
11205 Lebanon Rd #51
Mt. Juliet, TN 37122
Telephone: (615) 838-5903
Fax: (888) 868-0014
daniel@turklaylaw.com

Laura D'Agostino, Va. Bar No. 91556*
PACIFIC LEGAL FOUNDATION
3100 Clarendon Boulevard, Suite 1000
Arlington, VA 22201
Telephone: (202) 888-6881
LDAgostino@pacificlegal.org

/s/ Joshua P. Thompson
Joshua P. Thompson, Cal. Bar No. 250955*
PACIFIC LEGAL FOUNDATION
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
JThompson@pacificlegal.org

*Pro Hac Vice*

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

      I hereby certify that on January 19, 2024, the forgoing document was served upon counsel for the defendant via CM/ECF service.

                                              /s/ Joshua P. Thomspon
                                              Joshua P. Thompson

10

Case 3:23-cv-01175   Document 23   Filed 01/19/24   Page 10 of 10 PageID #: 90