# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| DO NO HARM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:23-cv-01175 |
| ) | |
| WILLIAM LEE, in his official capacity as ) | |
| Governor of the State of Tennessee, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S MEMORANDUM IN SUPPORT
## OF MOTION TO DISMISS AMENDED COMPLAINT

## INTRODUCTION

The case should be dismissed for lack of subject matter jurisdiction because Plaintiff has not adequately alleged any cognizable injury on behalf of its members or itself. Plaintiff Do No Harm—a non-profit organization based in Virginia and comprised of students, policymakers, and medical professionals—challenges two Tennessee statutes that call for the Governor to "strive to ensure" that at least one member of various boards and commissions is a member of a racial minority. *See* Tenn. Code Ann. § 8-1-111; *id.* § 63-3-103(b). Plaintiff contends that the challenged laws violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and that the laws prevent its licensed podiatrist members from filling positions on the Tennessee Board of Podiatric Medical Examiners ("Board").

Where, as here, an organization seeks standing on behalf of its members, the organization must name a member that has standing. Plaintiff's Amended Complaint, which alleges a Member A and Member B, fails on its face to "name the individuals who were harmed," as required in the Sixth Circuit. *See Tenn. Repub. Party v. Secs. & Exchange Comm'n*, 863 F.3d 507, 520 (6th Cir. 2017) ("Such specificity requires that the plaintiff-organization 'name the individuals who were harmed.'" (quoting *Summers v. Earth Island Institute*, 555 U.S. 488, 498 (2009)).

Furthermore, even if Plaintiff eventually identifies a member, no member suffers any harm from the challenged statutes. Dr. Bhekumuzi Khumalo, an African-American, was reappointed to the Board before Plaintiff filed this suit. Because "at least one member" of the Board is a member of a racial minority, the challenged laws have no bearing on foreseeable openings until at least 2027. Moreover, there are no current openings on the Board for which Member A is eligible, nor are there any scheduled openings until June 2025. Plaintiff therefore has not and cannot satisfy the "irreducible constitutional minimum of standing." *Lujan v. Defs. of*

1

*Wildlife*, 504 U.S. 555, 560 (1992). For all these reasons, Defendant respectfully requests the matter be dismissed.

## STATEMENT OF THE CASE

**The Board**

The Board is statutorily created and has authority to regulate the practice of podiatry, the treatment of foot- and ankle-related ailments, in Tennessee. Tenn. Code Ann. § 63-3-106. It consists of six members. Am. Compl., ECF 23, ¶ 21. Four of these members are licensed podiatrists with at least two years of practice in Tennessee. *Id.* A fifth member must be a licensed orthotist, prosthetist, or pedorthist. *Id.* And its sixth member must not engage in any conduct regulated by the Board, a so-called "citizen member." *Id.*; *see* Tenn. Code Ann. § 63-1-124.

Members of the Board are appointed by the Governor to four-year terms. Tenn. Code Ann. § 63-3-103(b). Two seats on the board became vacant at the end of June 2023, due to the expiration of the members' terms. Am. Compl., ¶ 24. On November 1, Governor Lee filled one of those vacancies by reappointing Dr. Bhekumuzi Khumalo to a four-year term. Ex. A, Dr. Khumalo Appt. Ltr.[1]; *Bd. Member Details, Dr. Khumalo*, Tenn. Sec'y of State, http://tinyurl.com/584e88mj (last visited Feb. 2, 2024); *Dr. Khumalo Oath of Office*, http://tinyurl.com/5n7hu7vc (last visited Feb. 2, 2024).[2] And for the second vacancy, he appointed Dr. Aaron Sorensen, also for a four-year term. Ex. B, Dr. Sorensen Appt. Ltr.; *Bd. Member Details, Dr. Sorensen*, Tenn. Sec'y of

---

[1] All referenced exhibits are attached to the concurrently filed Declaration of Reed N. Smith.
[2] Information that is available on government websites is self-authenticating pursuant to Rule 902 of the Federal Rules of Evidence, and "courts may accordingly take judicial notice of the information found on these websites." *Oak Ridge Env't Peace All. v. Perry*, 412 F. Supp. 3d 786, 810 n.6 (E.D. Tenn. 2019) (citing *Demis v. Sniezek*, 558 F.3d 508, 513 n.2 (6th Cir. 2009) (taking notice of government website); and *Newton v. Holland*, No. 13-61, 2014 WL 318567, at *1 (E.D. Ky. Jan. 29, 2014) (collecting cases)).

State, http://tinyurl.com/yc8yz4r7 (last visited Feb. 2, 2024); *Dr. Sorensen Oath of Office*, http://tinyurl.com/y5dmjksk (last visited Feb. 2, 2024). With those appointments, there are no openings for a licensed practitioner on the Board, and no current practitioner's term expires until June 30, 2025. *Bd. of Pod. Med. Examiners: Bd. Members List*, Tenn. Dep't of Health http://tinyurl.com/38aa627e (last visited Dec. 28, 2023) (showing term expiration dates).[3] The only remaining opening is for the statutorily reserved citizen member. *Id.*[4]

**Do No Harm**

Do No Harm is a "national nonprofit corporation" membership organization headquartered in Glen Allen, Virginia, comprised of "medical professionals, students, and policymakers." Am. Compl., ¶ 9. Do No Harm alleges that "Member A" is a Tennessee-licensed podiatrist and "Member B" is simply a Tennessee citizen who is not "subject to regulation by the Board." *Id.* ¶ 10-11. Neither is "a member of a racial minority," and both live in the State and are "qualified, ready, willing, and able to be appointed" to the Board, Member B as a citizen member. *Id.*

Do No Harm challenges two statutes pertaining to Executive Branch appointments. First, Tenn. Code Ann. § 8-1-111, which requires that for appointments to "governing or advisory entities of the executive branch of state government, the governor shall strive to ensure that at least one (1) such citizen serving . . . is a member of a racial minority." And second, specific to this case, Tenn. Code Ann. § 63-3-103(b) encourages that same striving for appointments to the Board.

---

[3] See *Perry*, 412 F. Supp. 3d at 810.
[4] Plaintiff alleges that the Tennessee Secretary of State website indicates that the citizen position is filled. *See* Am. Compl. ¶ 29. Defendant Board concedes that as of filing of the Amended Complaint, the citizen position remained vacant, as indicated on its website. *See id.* ¶ 30.

3

# MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows "for the dismissal of an action for lack of subject matter jurisdiction," *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014), which includes "Article III standing . . . question[s]," *Am. VioCare Inc. v. Howard & Howard Att'ys PLLC*, 702 F. App'x 416, 419 (6th Cir. 2017). A 12(b)(1) motion to dismiss "can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright*, 751 F.3d at 759.

"When reviewing a facial attack, a district court takes the allegations in the complaint as true" subject to the same plausibility standards governing "12(b)(6) motions to dismiss." *Genteck Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). While this Court accepts the truth of Plaintiff's allegations on a facial challenge, "[c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). But for factual attacks, courts "weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012) (citations omitted); *Gentek*, 491 F.3d at 330 (citations omitted) (allowing consideration of "affidavits, documents, and even a limited evidentiary hearing"). And for either, this Court must "presume that [it] lack[s] jurisdiction," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006), for "the *plaintiff* . . . [must] prov[e] jurisdiction" exists "to survive the motion," *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986) (emphasis in original).

# ARGUMENT

"The doctrine of standing is a threshold constitutional question of justiciability." *Mason v. Adams Cnty. Recorder*, 901 F.3d 753, 756 (6th Cir. 2018). Standing requires a plaintiff to show "(1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *FEC v. Cruz*, 142 S. Ct. 1638, 1646 (2022). To confer standing, an injury must be particular to the plaintiff; the Supreme Court "repeatedly has rejected claims of standing predicated on the right, possessed by every citizen, to require that the Government be administered according to law." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 482-83 (1982) (quotations omitted).

Here, Plaintiff fails to show that the challenged statutes cause any cognizable injury to an identified member or to itself. It therefore lacks standing, and the Court should dismiss this suit.

## I. Do No Harm Does Not Have Standing on Behalf of Its Members.

Do No Harm appears to rely primarily on associational standing. *See* Am. Compl., ¶ 6 ("bring[ing] this lawsuit to vindicate *its members'* constitutional rights" (emphasis added)). For associational standing, an organization must show that "its members would otherwise have standing to sue in their own right"; the "interests" that the suit "seeks to protect are germane to the organization's purpose"; and "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)); *Ass'n of Am. Physicians & Surgeons v. USFDA*, 13 F.4th 531, 537 (6th Cir. 2021) (same).

Plaintiff as an organization fails at step one of these requirements in two primary ways: *First*, facially, Do No Harm's amended complaint fails to identify any injured members. And

5

*second*, factually, no injury exists to its members because the Board currently has no open seats affected by the statutes.  For either reason, this Court should grant Defendant's motion to dismiss.

A. **Plaintiff Fails to Identify Any Member That Has Been Injured.**

Associational standing's first element requires that Plaintiff "must do more than identify a likelihood that" Defendant "will harm an unknown member." *Ass'n of Am. Physicians*, 13 F.4th at 543.  It must have instead "identif[ied] a member who has suffered (or is about to suffer) a concrete and particularized injury from the defendant's conduct." *Id.*  Just a "possib[ility] . . . that one individual will meet all of th[e] criteria . . . does no suffice." *Summers*, 555 U.S. at 499.  After initially failing to identify any injured members, Compl., ECF 1, ¶ 21.  ("[O]ne or more members [is] qualified, willing, and able to be appointed to the Board."), Plaintiff again fails to *identify* any injured members and relies on *unidentified* members designated "Member A" and "Member B," Am. Compl., ¶¶ 10-11.

Reliance on unnamed, unidentified, and unknown members necessarily fails to meet the requirement that an organizational plaintiff "identify a member" that has a cognizable injury. *Ass'n of Am. Physicians*, 13 F.4th at 543; *see also Protecting Air for Waterville v. Ohio Env't Prot. Agency*, 763 F. App'x 504, 507–08 (6th Cir. 2019) ("We cannot simply assume that petitioners have members who would be affected by the compressor stations' emissions; petitioners were required to . . . demonstrat[e] that identified members of their organizations had, or would imminently, suffer a sufficiently concrete injury.").  Plainly, Do No Harm "must show that one of its *named* members" has standing. *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 255 (6th Cir. 2018).

An allegation that "Member A" or "Member B" has standing is not materially different than simply asserting that some members or a member has standing—such pleadings are routinely

6

dismissed. *See, e.g., Ass'n of Am. Physicians*, 13 F.4th at 543; *Mich. Ass'n of Pub. Sch. Acads. v. United States Dep't of Educ.*, No. 1:22-CV-712, 2023 WL 8533456, at *4 (W.D. Mich. Dec. 6, 2023) (holding that a pleading that "one [] member is a developer that seeks to expand its existing public charter schools program in 2024" was insufficient "to identify which of their members . . . suffered an injury"); *Friends of Georges, Inc. v. Mulroy*, No. 2:23-CV-02163, 2023 WL 3790583, at *10 (W.D. Tenn. June 2, 2023) (rejecting associational standing where organization asserted its members "could be prosecuted under a plain reading of the AEA" because "it has not named a single individual member").

If Plaintiff's generic descriptions suffice for standing, then associational standing's naming requirement becomes dead letter for all practical purposes, allowing any organization to "proceed to discovery in nearly every case." *Prairie Rivers Network v. Dynegy Midwest Generation*, 2 F.4th 1002, 1010 (7th Cir. 2021). Not even the usual pseudonym standards would require those unknown members to move for anonymity, because they are not parties here under Fed. R. Civ. P. Rule 10(a). *See Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) (quoting Rule 10(a)) (listing factors when permitting pseudonymous "parties"). Instead, this requirement ensures every judge has jurisdiction over a *named* individual before enjoining a duly enacted law. *Summers*, 555 U.S. at 493. "[S]urely" providing names is "not a difficult task" if truly injured members exist, *Summers*, 555 U.S. at 499, but Do No Harm failed that task again on round two.

Nor does Plaintiff satisfy the singular exception to this requirement, which is "where *all* the members of the organization are affected by the challenged activity." *Id.* at 498-99 (emphasis in original). Plaintiff did not, and cannot, allege that the challenged statutes affect all its members. This is no mere pleading deficiency; as a "national nonprofit corporation," with a Virginia headquarters, Am. Compl., ¶ 9, the allegations strongly suggest that Plaintiff has members outside

7

of Tennessee, *all* of which would have to be "able and ready" to apply for a Board position—not plausible. *Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). Accordingly, the Court should hold that Do No Harm has failed to sufficiently allege standing on behalf of its members.

### B. No Member Has a Cognizable Injury.

Even assuming anonymous pleadings satisfy the requirement to identify a named member, neither Member A nor Member B have standing factually. With Plaintiff seeking prospective relief, it must show a *present* harm, not mere exposure to past illegal conduct. *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 491 (6th Cir. 2017); *see also Pucci v. Mich. Supreme Ct.*, 601 F. Supp. 2d 886, 896-97 (E.D. Mich. 2009) (holding that suit regarding a plaintiff's eligibility for a court administrator position was "hypothetical" because "[t]he court administrator position is currently filled").

#### 1. All practitioner seats are filled.

For Member A, who is allegedly "a licensed podiatrist in Tennessee," there is no current opening on the Board. Governor Lee has already filled the Board's two vacant practitioner seats, appointing Drs. Khumalo and Sorensen in November 2023. Those practitioners have signed their oaths of office and have entered four-year terms, leaving no practitioner seat open again until at least June 30, 2025, when the next practitioner member's term expires. *See Bd. Members*, http://tinyurl.com/38aa627e. With no vacancies on the Board until June 2025, Plaintiff and its members do not face "imminent" harm sufficient to invoke the Court's jurisdiction.

#### 2. Conclusory allegations that Member B is eligible are insufficient.

Although the Board does have an opening for a citizen seat, Member B also has failed to allege standing. The Amended Complaint asserts in conclusory fashion that Member B does not

8

Case 3:23-cv-01175   Document 25-1   Filed 02/02/24   Page 9 of 15 PageID #: 103

engage in any profession, business, or activity subject to regulation by the Board. The Amended Complaint does not identify what Member B does, so it is impossible to judge the plausibility of that claim. This is precisely the type of "formulaic recitation" that courts routinely reject. *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) ("A plaintiff must demonstrate 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))); *compare* Tenn. Code Ann. § 63-1-124 *with* Am. Compl., ¶ 11.

### 3. No openings prior to June 2027 are affected by the challenged statutes.

Furthermore, neither the mysterious Member A nor Member B have standing because no foreseeable openings for the Board are subject to the challenged acts until at least 2027. Plaintiff must allege that there would be a barrier to their appointment on the Board due to the challenged acts. *See City of Jacksonville*, 508 U.S. at 666 ("The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit."). Under the challenged laws, the General Assembly asks the Governor to "'strive to ensure' that *one* of the current openings on the Board is filled by a racial minority." Am. Compl., ¶ 22 (quoting Tenn. Code §§ 8-1-111, 63-3-103(b)) (emphasis added). Dr. Khumalo, who is African American, was reappointed to a four-year term on the Board on November 1, 2023 "effective immediately." Ex. A. Because the Board currently has a member who belongs to a racial minority, any Board openings are open to all qualified and interested persons, leaving no barrier to entry and no unequal treatment for those desiring positions on the Board before Dr. Khumalo's term ends on June 30, 2027.

In short, the challenged laws have no bearing on the filling of the remaining open citizen member seat. Thus, none of Plaintiff's "qualified, willing, and able" members, Am. Compl., ¶¶ 35-

9

36, can suffer any harm attributable to the challenged statutes before June 2027, when Dr. Khumalo's term ends. *Ass'n of Am. Physicians*, 13 F.4th at 543. This is true regardless of whether the previously filled seats were "race-conscious appointments." Am. Compl., ¶ 4. Plaintiff must demonstrate a current harm, not mere exposure to past illegal conduct. *Sumpter*, 868 F.3d 473, 491 (6th Cir. 2017).

### 4. Any distant future injury is unripe.

Because Plaintiff relies on an injury that may never occur and is not foreseeable until 2027, even if the injury is cognizable, the case is not ripe. "Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for the court's review." *Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Educ.*, 53 F.4th 1014, 1020 (6th Cir. 2022) (citation omitted). A case is appropriate for review only "if the probability of the future event occurring is substantial and of 'sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Magaw*, 132 F.3d at 284 (quoting *Golden v. Zwickler*, 394 U.S. 103, 108 (1969)).

"Where claims are not ripe, federal courts lack subject matter jurisdiction and the complaint should be dismissed." *Middlebrooks v. Parker*, No. 3:19-CV-01139, 2020 WL 107106, at *4 (M.D. Tenn. Jan. 8, 2020) (Campbell, J.) (quoting *Tri-Corp Mgmt. Co. v. Praznik*, 33 F. App'x 742, 745 (6th Cir. 2002)); *see also Briggs v. Ohio Elections Comm'n*, 61 F.3d 487, 493 (6th Cir. 1995) ("This court is also obliged under Article III to limit its jurisdiction to ripe cases, to avoid issuing advisory opinions based upon hypothetical situations."). Here, Plaintiff asks the court to look three and a half years into the future, when Dr. Khumalo's term expires. Such prophecies regarding events well into the future are prone to lead to impermissible advisory opinions. Here, the alleged harm may thus never come to pass. For example, "Member A" may no longer be ready,

10

willing, and able to serve on the Board in three and a half years; the General Assembly may amend the challenged statutes before that time; or the Board's appointment requirements may change. In the meantime, neither "Member A" nor "Member B" would suffer any harm. They may compete for openings on the Board on the same terms as anyone else.

Accordingly, the Court should hold that the case is not ripe for review.

## II. Plaintiff Has No Injury on Behalf of Itself.

It is unclear from the Amended Complaint whether Plaintiff Do No Harm continues to bring suit on behalf of itself as well as its members. To the extent that it does, it also lacks standing. Organizational plaintiffs like Do No Harm must establish standing through "the same inquiry" that applies to "individual[s]" where the organization suffers harm itself. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378 (1982). Here, the organization itself could never be eligible for a seat on the Board, negating any injury to itself.

Plaintiff alleges a generalized interest in "vindicat[ing] its members' constitutional rights," "ensur[ing] that every qualified podiatrist and qualified citizen in Tennessee has the equal right to serve on the Board," and "ensur[ing] that Tennesseans are regulated by a Board that is not selected on the basis of race." Am. Compl., ¶ 6. But such claims are an impermissible challenge to "laws of general application where [Plaintiff's] own injury is not distinct from that suffered in general by other taxpayers or citizens." *Johnson v. Bredesen*, 356 F. App'x 781, 784 (6th Cir. 2009) (quoting *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 598 (2007)). The Supreme Court "repeatedly has rejected claims of standing predicated on 'the right . . . to require that the Government be administered according to law.'" *Valley Forge Christian Coll.*, 454 U.S. at 482-83 (quotations omitted); *see also Lujan*, 504 U.S. at 576-77 (holding that the "public interest in proper administration of the laws" is not sufficiently particularized to create Article III standing).

11

Likewise, cases involving Tennessee's appointment of appellate judges have been dismissed for lack of standing, being "'precisely the kind of undifferentiated, generalized grievance about the conduct of government that [the Supreme Court] ha[s] refused to countenance in the past.'" *See Moncier v. Haslam*, 1 F. Supp. 3d 854, 859 (E.D. Tenn. 2014) (quoting *Lance v. Coffman*, 549 U.S. 437, 442 (2007) (alterations in *Haslam*)) (challenging appointment of appellate judges); *see also Johnson*, 356 F. App'x at 784 (challenging appointment of supreme court justices). Without more, Plaintiff complains of no cognizable injury to itself.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendant's motion to dismiss for lack of standing.

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General & Reporter

*/s/ Reed N. Smith*
Reed N. Smith (BPR# 040059)
Assistant Attorney General

Trenton Meriwether (BPR# 038577)
Office of the Tennessee Attorney General
Healthcare Division
P.O. Box 20207
Nashville, Tennessee 37202
(615) 741-9593
reed.smith@ag.tn.gov
trenton.meriwether@ag.tn.gov

*Counsel for Defendant*

13

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via this Court's electronic filing system on this 2nd day of February 2024.

Daniel J. Turklay (BPR# 034600)
TURKLAY LAW
11205 Lebanon Rd #51
Mt. Juliet, TN 37122
P: (615) 838-5903
F: (888) 868-0014
daniel@turklaylaw.com

Joshua P. Thompson (CA Bar# 250955)
PACIFIC LEGAL FOUNDATION
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
P: (916) 419-7111
JThompson@pacificlegal.org

Laura D'Agostino (VA Bar# 91556)
PACIFIC LEGAL FOUNDATION
3100 Clarendon Boulevard, Suite 1000
Arlington, VA 22201
P: (202) 888-6881
LDAgostino@pacificlegal.org

*Attorneys for Plaintiff*

/s/ Reed N. Smith
REED N. SMITH
Assistant Attorney General