IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DO NO HARM, a nonprofit corporation incorporated in the State of Virginia, | ) ) ) |
| | ) NO. 3:23-cv-01175 |
| Plaintiff, | ) |
| | ) JUDGE CAMPBELL |
| v. | ) MAGISTRATE JUDGE HOLMES |
| | ) |
| WILLIAM LEE, in his official capacity as Governor of the State of Tennessee, | ) ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM**

Pending before the Court is a motion to dismiss the amended complaint filed by Defendant William Lee (Doc. No. 25), to which Plaintiff filed a response (Doc. No. 26), and Defendant filed a reply (Doc. No. 30). Plaintiff also filed a notice of supplemental authority (Doc. No. 32), to which Defendant responded (Doc. No. 33).

For the reasons stated herein, the motion will be **GRANTED**.

**I.    BACKGROUND**

The Tennessee Board of Podiatric Medical Examiners (the "Board") was established almost one hundred years ago to regulate the practice of podiatry in Tennessee. (Am. Compl., Doc. No. 23, ¶ 20). The duties of the Board include licensing qualified podiatrists, investigating allegations of misconduct, disciplining podiatrists that violate its rules or regulations, and interpreting the laws, rules, and regulations governing podiatry in Tennessee. (*Id.*, ¶ 21). The Board is comprised of six members appointed by the Governor of Tennessee. (*Id.* ¶ 21). Four of those members must be licensed Tennessee podiatrists who have been regulated by the Board for at least

two years. (*Id*. (citing Tenn. Code Ann. § 63-3-103)). A fifth member must be a licensed orthotist, prosthetist, or pedorthist. (*Id*. (citing Tenn. Code Ann. § 63-3-213)). A sixth member must be a citizen who does not engage in any conduct that is regulated by the Board. (*Id*. (citing Tenn. Code Ann. § 63-1-124)).

When making appointments to boards, committees, and other governing or advisory entities of the executive branch of state government, including the Board of Podiatric Medical Examiners, the Governor "shall strive to ensure that at least one (1) such citizen serving on each such board, commission, committee, or other governing or advisory entity is sixty (60) years of age or older and that at least one (1) such citizen serving on each such board, commission, committee, or other governing or advisory entity is a member of a racial minority." Tenn. Code Ann. §§ 8-1-111, 63-3-103(b).

Plaintiff Do No Harm is a national nonprofit corporation headquartered in Glen Allen, Virginia. (Doc. No. 23, ¶ 9). Its mission is "to protect healthcare from a radical, divisive, and discriminatory ideology." (*Id*.). Do No Harm states that it has more than 6,000 members, including one or more individuals who have been a licensed podiatrist for over two years in Tennessee, and one or more individuals who are Tennessee citizens who do not engage in any profession or business activity subject to regulation by the Board. (*Id*.).

Two of these members are identified in the Amended Complaint as "Member A" and "Member B." (*Id*., ¶¶ 10, 11). Plaintiff states that Member A has been a licensed podiatrist in Tennessee for over thirty years and is not a member of a racial minority. (*Id*., ¶ 10). Member B is a Tennessee citizen who has resided in Tennessee for over 27 years; he does not engage in any profession, business, or activity subject to regulation by the Board; and he is not a member of a

2

racial minority. (*Id*., ¶ 11). Plaintiff states that Member A and Member B are qualified, willing, and able to be appointed to the Board of Podiatric Medical Examiners. (*Id*., ¶¶ 10, 11).

Plaintiff Do No Harm bring this suit challenging the constitutionality of Tenn. Code Ann. §§ 8-1-111, 63-3-103(b). Plaintiff contends the statutory mandate for the Governor to "strive to ensure" that the Board includes at least one member of a racial minority violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

Defendant moves to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Specifically, Defendant argues Do No Harm Lacks standing because: (1) it fails to identify a particular member the challenged laws have allegedly injured; (2) there is no cognizable injury to any members or to the organization; and (3) the claims are not ripe.

## II. STANDARD OF REVIEW

Rule 12(b)(1) "provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Id.* at 759. Where a Rule 12(b)(1) motion challenges subject matter jurisdiction based on the face of the complaint, the plaintiff's burden is "not onerous." *Musson Theatrical Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). A court evaluating this sort of facial attack to the assertion of subject matter jurisdiction must consider the allegations of fact in the complaint to be true and evaluate jurisdiction accordingly. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

3

"When a Rule 12(b)(1) motion attacks the factual basis for jurisdiction, the district court must weigh the evidence." *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). The Court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings. *Cartwright*, 751 F.3d at 759-60; *see also*, *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (allowing consideration of "affidavits, documents, and even a limited evidentiary hearing"). Under either standard, the plaintiff bears the burden to establish that subject matter jurisdiction exists. *Cartwright*, 751 F.3d at 760.

Here, Defendant raises both facial and factual challenges to subject matter jurisdiction. Defendant challenges standing on the grounds that Plaintiff failed to name members is a facial challenge. Defendant's arguments that Plaintiff lacks a cognizable injury in fact and that the claim is not ripe present factual challenges.

### III. ANALYSIS

#### A. Standing

Standing requires a plaintiff to show "(1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *Fed. Election Comm. v. Cruz*, 596 U.S. 289, 296 (2022). As an organization, Do No Harm has standing to bring a claim when: (1) its members would otherwise have standing to sue in their own right, (2) the interests at stake are germane to the organization's purpose, and (3) neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit." *Students for Fair Admissions, Inc. v. President and Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023); *Ass'n of Am. Physicians & Surgeons v. USFDA*, 13 F.4th 531, 537 (6th Cir. 2021) (same).

Defendant first argues Plaintiff has not established standing to sue on behalf of its members because the Amended Complaint fails to identify (by name) any member who has been injured. (Doc. No. 25-1 at 5-6). Plaintiff provides numerous circuit court opinions that, according to Plaintiff, allow for organizational standing based on members proceeding under pseudonyms. (Doc. No. 26 at 4-7; Doc. No. 32 at 1-2). Defendant relies on other cases, but those standing cases were not decided on the basis of pseudonyms, but instead on other standing and pleading grounds. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (allegations of generalized harm to members); *Ass'n of Am. Physicians & Surgeons v. United States Food and Drug Admin.*, 13 F.4th 531, 543 (6th Cir. 2021) (alleged injury to members was not caused by defendant); *Protecting Air for Waterville v. Ohio Env't Prot. Agency*, 763 F. App'x 504 (6th Cir. 2019) (failure to demonstrate individual members suffered concrete injury); *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250 (6th Cir. 2018) (no standing to seek injunctive relief for unspecified unnamed members when the specified named members were ineligible for relief); *Mich. Ass'n of Pub. Sch. Acads. v. United States Dep't of Ed.*, No. 1:22-cv-712, 2024 WL 455079, at * 4 (W.D. Mich. Jan. 10, 2024) (failure to identify which members of the organization were directly injured); *Friends of George's, Inc. v. Mulroy*, No. 2:23-cv-02163, 2023 WL 3790583 (W.D. Tenn. Jun. 2, 2023) (holding the organization had standing to bring claims based on injury to the organization (organizational standing) but not standing based on injury to members (association standing) because it failed to identify any member who would suffer injury), *rev'd and remanded*, 2024 WL 3451870 (6th Cir. Jul. 18, 2024) (finding no showing of pre-enforcement injury); *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1010 (7th Cir. 2021) (plaintiff identified harm to members "only as a collective").

5

Defendant asks the Court not to follow as persuasive the recent Tenth Circuit case *Speech First, Inc. v. Shrum*, 92 F.4th 947 (10th Cir. 2024).[1] In that case, the Tenth Circuit held that an organization can base standing on the harms allegedly done to its members, even those proceeding under pseudonyms, absent a showing of reason to disbelieve the facts and declarations relevant to the requirements of standing. *Id*. at 950 (citing *Roe v. Wade*, 410 U.S. 113 (1973); *Doe v. Bolton*, 410 U.S. 179, 187 (1973); *FAIR v. Rumsfeld*, 291 F. Supp. 2d 269, 286 n.6 (D.N.J. 2003), *aff'd on standing issue sub nom.*, *Rumsfeld v. FAIR*, 547 U.S. 47, 52 n.2 (2006)).

Defendant relies on *Tennessee Republican Party v. Securities and Exchange Commission*, 863 F.3d 507 (6th Cir. 2017), for the proposition that member of organizations must be named in order for the organization to have standing to sue based on alleged injury to its members. That case, however, did not involve the use of pseudonyms, and the Supreme Court authority cited by the court was addressing purported organizational standing not anchored in an allegation of harm to a specific member, but instead based on generalized harm based on speculation that members may be harmed in the future. *Id*. at 520 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009)).

Without a showing that the representations concerning Member A and Member B in the Amended Complaint (Doc. No. 23, ¶¶ 10, 11) and the Rasmussen Declaration (Doc. No. 26-1, ¶¶ 6, 7)) are inaccurate, and given the long history of allowing parties to proceed under pseudonyms, the Court finds that Plaintiff has sufficiently identified members who are alleged to have standing in their own right.[2] *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 458-59

---

[1] Part of Defendant's argument was that *Speech First v. Schrum* was an unpublished decision, which was true at the time of the briefing. The case has since been published. 92 F. 4th 947 (10th Cir. 2024) (filed February 9, 2024).

[2] If information later comes to the Court's attention that calls into question whether the two members have standing to sue in their own right, the Court will revisit standing.

6

(1958) (anonymous status of association's members posed no standing hurdle); *Rumsfeld*, 547 U.S. at 52 n.2 (finding the plaintiff organization had standing even though its membership list was secret).

**B.     Injury in Fact and Ripeness**

   1.  <u>The Legal Standard</u>

As discussed above, to satisfy Article III standing, a plaintiff must show, among other things, that it, or, in this case, its members, suffered an "injury in fact," which can be "actual present harm or a significant possibility of future harm." *Sumpter v. Wayne Cty.*, 868 F.3d 473, 490 (6th Cir. 2017); *Thomas More Law Center v. Obama*, 651 F.3d 529, 535 (6th Cir. 2011), *abrogated as to other issues by Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012). "In the context of claims for injunctive or declaratory relief, 'a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized,' and that 'threat must be actual and imminent, not conjectural or hypothetical[.]'" *Sumpter*, 868 F.3d at 491 (citing *Summers*, 555 U.S. at 493).

The doctrine of ripeness originates from the same Article III limitation as standing. *Doe v. Univ. of Mich.*, 78 F.4th 929, 941 (6th Cir. 2023). In order to establish that a claim is "ripe for judicial resolution," the court considers: (1) whether the claim is "'fit[ ] ... for judicial decision' in the sense that it arises in a concrete factual context and concerns a dispute that is likely to come to pass?" and (2) "the hardship to the parties of withholding court consideration[.]" *Id*. at 942 (citing *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc)). Similar to the considerations for an injury in fact, "[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id*. (citing *Texas v. United States*, 523 U.S. 296 (1998)). Sometimes standing and ripeness both "boil down to the

7

same question" – whether the plaintiff suffered an injury in fact. *Id*. ("Ripeness requires that the injury in fact be certainly impending."); *see also*, *Thomas More Law Center*, 651 F.3d at 537 (noting that reasoning in ripeness decisions applies equally to questions of standing when the Article III question concerns the imminence of the plaintiff's injury). This is such a case.

The Sixth Circuit has explained that the "imminence" of the plaintiff's injury depends not on temporal proximity, but on the probability that "an event will come to pass." *Thomas More Law Center*, 651 F.3d at 536. Of course, "[t]he uncertainty that the event will come to pass may be based on developments that may occur during a gap in time between the filing of a lawsuit and a threatened future injury." *Id*. (citing *520 S. Mich. Ave. Assocs., Ltd. v. Devine*, 433 F.3d 961, 962 (7th Cir.2006) ("Standing depends on the probability of harm, not its temporal proximity.")). But the significance of the inquiry is the certainty of the injury, not temporal proximity. *Id*. ("[I]t is well settled that a time delay, without more, will not render a claim of statutory invalidity unripe if the application of the statute is otherwise sufficiently probable.") (citing *Riva v. Massachusetts*, 61 F.3d 1003, 1011 (1st Cir. 1995)).

2. The Statutes

As an initial matter, determination of whether Member A and Member B have established an injury in fact resulting from the statutes depends on what the statutes require with regard to the Governor's consideration of race in appointments to the Board.[3] The Court beings, as it must with the statutes. The statute specific to the Board of Podiatric Medical Examiners provides that "the governor shall strive to ensure that … at least one (1) person serving on the board is a member of

---

[3] The parties have not developed their argument concerning interpretation of the statutes. Their briefing on this issue consists of one paragraph in Plaintiff's response and one footnote in Defendant's reply. (Doc. No. 26 at 13; Doc. No. 30 at 4 n.4).

8

a racial minority." *See* Tenn. Code Ann. § 63-3-103(b). The general statute, Tenn. Code Ann. § 8-1-111, uses substantially the same language.

Defendant argues that the plain language of the statutes obligates the Governor to consider race of potential Board members to ensure at least one member of the Board is a member of a racial minority, and that once the Board has "at least one" racial minority "there is nothing more to ensure" and the statute has no further effect. (Doc. No. 30 at 4, n.4; *see also*, Doc. Nos. 25-1 and 30 throughout). In Plaintiff's view, the statute requires the Governor to "weigh and consider a candidate's race for every appointment" regardless of the composition of the Board because "at least one" "establishes a baseline, not a limit." (Doc. No. 26 at 13).

Defendant has the better argument. The Court agrees with Plaintiff that "at least one" sets a baseline, not a limit. But, to the extent that "shall strive to ensure" places any affirmative obligation on the Governor (neither Plaintiff, nor Defendant argue otherwise), that obligation ends when there is "at least one" person serving on the Board who is a member of a racial minority. Any further consideration by the Governor of the racial composition of the Board is purely discretionary.

3. Injury in Fact

Defendant argues neither Member A nor Member B can show standing because "no foreseeable openings for the Board are subject to the challenged acts until at least 2027." Defendant asserts that because a racial minority is a current board member whose term will expire in 2027, any appointments between now and then will be unaffected by the relevant statute. (*Id*. at 9-10). Defendants add that even then, the alleged harm may never come to pass for a number of reasons: the members may no longer be ready, willing, and able to serve on the Board; the General Assembly may amend the statutes; or the Governor may appoint other racial minorities to the

9

Case 3:23-cv-01175   Document 37   Filed 08/08/24   Page 9 of 11 PageID #: 214

Board, such that the statutory obligation to "strive to ensure" there is "at least one" racial minority on the Board may never be triggered. (*Id*. at 10-11). Defendant notes that between now and 2027, four Board seats will become available and any alleged harm to Members A and B will come to pass if, and only if, each of those open Board seats are filled by non-minorities. Defendant states that, in the past, two racial minorities served on the Board at the same time and could very well do so in the future. (Doc. No. 30 (citing March 11, 2022 Board Minutes).[4,5]

As discussed above, the imminence inquiry is more about the certainty that harm will come to pass than time, so the fact that all practitioner seats are currently filled is of no moment when the appointments are for limited terms and there is no question that the Governor will be called upon to appoint new Board members. But the inquiry does not end there. While the time does not itself defeat standing, "developments that may occur during a gap in time" are relevant to the inquiry as to certainty. *Thomas More Law Center*, 651 F.3d at 536. Here, although it is certain that Board seats will become available, whether the statutes will be triggered based on the composition of the Board is unknowable.

Plaintiff argues that members may come off the Board at "unpredictable times" – specifically that Dr. Khumalo may not remain on the Board until the end of his term – and contend that Board vacancies are not always timely publicized. (Doc. No. 26 at 12). Defendant responds by pointing to evidence that the term end dates are publicly available. (*See* Doc. No. 30 at 2; Doc.

---

[4] The March 11, 2022 Board Minutes list as board members Dr. Ramesh Pavuluri and Dr. Bhekumuzi Khumalo. Defendant states that Dr. Pavuluri is Indian American and Dr. Khumalo is black. (*See* Supp. Decl. of Reed Smith, Doc. No. 30-2; Dr. Pavuluri's Application for Gubernatorial Appointment to a Board or Commission dated February 21, 2017, Doc. No. 30-3; Dr. Khumalo's undated application for Governor's Appointment, Doc. No. 30-4).

[5] The March 11, 2022 Board Minutes are available at *https://www.tn.gov/content/dam/tn/health/healthprofboards/03-11-2022-Minutes.pdf*.

No. 25-1 at 3 (citing Bd. of Pod. Med. Examiners: Bd. Members List, Tenn. Dep't of Health *https://www.tn.gov/health/health-program-areas/health-professional-boards/podiatric-board/podiatric-board/members.html* (showing term expiration dates)). Defendant argues that possibility of unanticipated openings is nothing but speculation. The Court agrees. The likelihood that a Board seat will become open before the end of a term just as speculative as the possibilities raised by Defendant that Members A and B may no longer be "ready, able, and willing, and able to serve on the Board" or that the legislature will repeal the law. "[T]hese events are hardly probable and not the kinds of future developments that enter into the imminence inquiry." *Thomas More Law Center*, 651 F.3d at 537-38.

In sum, there is rampant speculation on both sides about whether there will be unscheduled Board openings and what the composition of the Board will be when openings occur. Plaintiff is correct that the possibility that a minority will be appointed between now and 2027 is no more than speculation. But, then again, so is the reverse. Either way, the certainty of injury to Members A and B is speculative. The speculation runs both ways, but the burden to establish standing lies with the Plaintiff. Here, the Plaintiff has not met that burden.

## IV.   CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss (Doc. No. 25) will be **GRANTED**. An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE